UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

GONZALO VALENCIA HERRERA,
et al.,

        Defendants.

CR. NO. S-07-88 FCD

MEMORANDUM AND ORDER

----oo0oo----

On June 5, 2008, the court heard defendant Gonzalo Valencia Herrera's ("Herrera") motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29").[1] After hearing oral argument, the court took the motion under submission.[2] The parties subsequently filed written memoranda supplementing their oral argument. (Docket #s 152, 153.) The

---

[1] Herrera initially made his Rule 29 motion at the close of the government's case; the court deferred ruling on the motion until the close of evidence. Fed. R. Crim. P. 29(b).

[2] On June 5, the court also heard co-defendants Margarito Ramirez Caballero ("Caballero") and Ricardo Valencia Diaz's ("Valencia Diaz") Rule 29 motions. The court denied these motions from the bench.

1

court has considered these submissions and by this order, issues its written decision on the motion, granting judgment of acquittal for Herrera.

Rule 29 provides in pertinent part:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.

Herrera is charged in the Superseding Indictment with (1) conspiring to distribute methamphetamine or possess with the intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1); and (2) possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  On both counts, the court finds that the government failed to produce evidence from which any rational trier of fact could find beyond a reasonable doubt that Herrera committed the crimes charged.  United States v. Mosely, 465 F.3d 412, 415 (9th Cir. 2006) (holding that consideration of a Rule 29 motion requires the court to view the evidence in the light most favorable to the prosecution and determine whether "*any* rational trier of fact could find each essential element of the crime[s] beyond a reasonable doubt") (citation omitted).

As to the conspiracy charge, the court assumes for purposes of this motion that the government produced sufficient evidence that a conspiracy existed among Herrera's co-defendants, as Herrera did not argue to the contrary.  Once the existence of the conspiracy is established, evidence of only a slight connection by Herrera is necessary to support a conviction of knowing participation in the conspiracy.  United States v. Corona-

1  <u>Verbera</u>, 509 F.3d 1105, 1117 (9th Cir. 2007).  A defendant may be
2  "'slightly connected' even if he did not know all the
3  conspirators, did not know all the details of the conspiracy, did
4  not participate in the conspiracy from the outset, and did not
5  participate in all the enterprises of the conspiracy."  <u>Id.</u>  The
6  defendant's connection to the conspiracy may be based upon
7  circumstantial evidence.  <u>United States v. Herrera-Gonzalez</u>, 263
8  F.3d 1092, 1097 (9th Cir. 2001).

9  However, the Ninth Circuit has repeatedly emphasized that
10 "mere presence" of a defendant "in suspicious circumstances is
11 not enough to imply knowledge."  <u>Corona-Verbera</u>, 509 F.3d at
12 1117.  Additionally, mere presence "at the location of a
13 conspiracy's activities, while the activities are taking place,
14 [even] knowing that they are taking place, without proof of
15 intentional participation in the conspiracy, cannot support a
16 conspiracy conviction."  <u>Herrera-Gonzalez</u>, 263 F.3d at 1097.

17 The government's theory of the case is that Herrera, in
18 conjunction with co-defendants Caballero and Valencia Diaz,
19 provided security and counter-surveillance during the planned
20 methamphetamine transaction on February 24, 2007.  Counter-
21 surveillance activities can constitute acts in furtherance of the
22 conspiracy.  <u>United States v. Moreno-Flores</u>, 33 F.3d 1164, 1171
23 (9th Cir. 1994).  The question presented by defendant Herrera's
24 motion is whether, viewing the evidence in the light most
25 favorable to the prosecution, a rational juror could find that
26 the government has proven beyond a reasonable doubt that Herrera
27 (1) was a member of the conspiracy as charged in Count I; and (2)
28 possessed methamphetamine with the intent to distribute as

3

charged in Count II.  The court grants defendant Herrera's Rule 29 motion based upon the following findings:

(1) A text message was sent on February 22, 2007 from Victor Alvarado ("Alvarado") to Valencia Diaz, asking for a favor from Valencia Diaz, "Chalo" (Herrera), and "Luis" (Jose Luis Villanueva-Diaz ("Villanueva-Diaz")), for which they would be paid.

(2) Valencia Diaz testified that *he* received the message, but did not show it to anyone.  Nevertheless, on February 24, 2007, Herrera[3] showed up with Valencia Diaz and Villanueva-Diaz at the Travel Center in Corning, California, the alleged rendevous location, at which Alvarado was also present.  A rational juror could infer from this evidence that Herrera learned of the text message and was willing to do a favor for Alvarado in exchange for payment.

(3) The plain language of the text message itself does not establish a proposal or agreement to assist in a drug transaction.

(4) There is no testimony of any further communication between Herrera and Valencia Diaz.

(5) There is no testimony of any communication between Herrera and Alvarado.

(6) There is no testimony of any communication between Herrera and the driver of the Chevrolet Silverado pick-up, Caballero.

---

[3] Herrera is Valencia Diaz's cousin and lived with him at the time.

4

 (7) Moreover, there is no testimony of any communication between Herrera and other members of the conspiracy, including Sabas Miramontes, Jesus Ontiveros, or Villanueva-Diaz.

 (8) There was no evidence that Herrera had a cell phone or made or received calls from any conspirators or alleged co-conspirators on any phones at any time.[4]

 (9) While telephone records demonstrated numerous calls between the cell phones of Valencia Diaz and Caballero to and from Alvarado on February 24, 2007, and the days preceding, there is no testimony that the substance of these calls was ever communicated to Herrera.[5]

 (10) Any communication or contact of any kind with Hererra by anyone on February 24, 2007, must be inferred from his mere presence on the rear bench of the Silverado.

 (11) There was no testimony that Herrera had knowledge of the gun located under the rear bench seat of the Silverado. Valencia Diaz testified that Alvarado gave him the gun and Valencia Diaz put the gun in the Silverado. There was no testimony that Herrara (1)

---

[4] In light of the evidence that Herrera is illiterate, there is a question as to whether he has the skill set to fully utilize a cell phone.

[5] The government emphasizes Agent Parker's testimony that when the Silverado exited the Applebee's lot, he observed the passenger in the rear bench seat (Herrera) leaning forward to the occupants in the front seat (Caballero and Valencia Diaz). This fact, again, is not evidence of Herrera's knowledge of the conspiracy; even considered in conjunction with the coordinated movements of the Silverado in the parking lot, this act of conceivable communication by Herrera does not establish knowing participation by him in the drug transaction.

        witnessed Valencia Diaz put the gun in the Silverado;
(2) knew the gun had been given to Valencia Diaz by Alvarado; (3) knew the gun case was under the rear bench seat; or (4) knew there was a gun inside the gun case.[6]

(12) Herrera did not attempt to flee and was arrested without incident.

(13) There is no evidence that Herrera made any incriminating statements to law enforcement post-arrest.

The government argues that a rational trier of fact could infer Valencia Diaz conveyed the substance of the text message to his cousin, Herrera, thus, explaining Herrera's presence at the Travel Center. The government also argues that the text message coupled with the conduct of Valencia Diaz and Caballero, the statements of Valencia Diaz regarding the involvement of Villanueva-Diaz, and the presence of Herrera in the Silverado provide the necessary circumstantial evidence to ensnare Herrera in the conspiracy beyond a reasonable doubt.

A rational trier of fact could infer that Valencia Diaz reported the substance of the text message from Alvarado to Herrera and this information enticed Herrera to the Travel Center and into the Silverado. However, the text message, alone, describes neither the agreement, nor the enterprise, nor the

---

[6] The government argues that a rational juror could find that the gun case was visible to Herrera upon entering the Silverado since one of the arresting officers observed the gun case. However, there is no testimony that the conditions upon which the officer observed the gun case were the same as when Herrera entered the vehicle.

transaction which was to take place on February 24, 2007, much less Herrera's purported role.  The conduct of Valencia Diaz and Caballero cannot legally be imputed to Herrera.  Likewise, the involvement of Villanueva-Diaz in a drug transaction cannot legally be imputed to Herrera.  There is simply no evidence that Herrera knew of a drug transaction, agreed to participate in a drug transaction, or knowingly engaged in conduct meant to further a drug transaction on February 24, 2007.

At best, the government has presented evidence that Herrera agreed to perform a favor for Alvarado for payment.  However, the only actual conduct by Herrera that the government can point to is Herrera's *presence* in the Silverado.  The inference that Herrera knew he had a chance to make money doing a favor for Alvarado, without further explanation, falls short of establishing Herrera's *knowing* participation in the conspiracy.  This evidentiary gap between the possible inference to be drawn from the text message and Herrera's "mere presence" in the Silverado is fatal to the government's case against Herrera.

The weakness of the evidence against Herrera is well-illustrated by comparing this case to several others where the Ninth Circuit held the evidence insufficient to establish a slight connection to a drug conspiracy.  <u>United States v. Ramos-Rascon</u>, 8 F.3d 704 (9th Cir. 1993); <u>United States v. Sanchez-Mata</u>, 925 F.2d 1166 (9th Cir. 1991); <u>United States v. Penagos</u>, 823 F.2d 346 (9th Cir. 1987); <u>United States v. Lopez</u>, 625 F.2d 889 (9th Cir. 1980).  In many respects, these cases presented far stronger facts against the defendants to establish knowing participation in the conspiracy, yet the Ninth Circuit

7

still reversed the juries' convictions. For example, in <u>Lopez</u>, defendant Lopez spent all day with drug conspirators and then accompanied them to the scene of a drug transaction riding in a car with two conspirators, one of whom had a large quantity of heroin in her purse. In finding the evidence insufficient to support the conspiracy conviction, the Ninth Circuit emphasized that Lopez took no part in negotiations for or delivery of the drugs; Lopez was never seen by the agents prior to his arrest; there was no evidence Lopez had knowledge of the conspirators' activities or had any financial interest in the transaction (he had only $42.55 on him at the time of his arrest). 625 F.2d at 896. Ultimately, the Ninth Circuit held that the district court erred in denying Lopez' Rule 29 motion: "The government has the obligation to establish not only the opportunity but also the actual meeting of minds. Mere association and activity with a conspirator does not meet the test." <u>Id.</u> (citation omitted).

Similarly, in <u>Penagos</u>, defendant Penagos was present and appeared to be the "look out" when one conspirator transferred drugs from one car to another. Penagos was with one conspirator for forty-five minutes while the conspirator placed and received phone calls. Penagos was arrested in an apartment where cocaine and four telephone pagers were found. However, in reversing Penagos' conspiracy conviction, the Ninth Circuit emphasized that Penagos' suspect activities did not occur at meetings between buyers and sellers or during actual transfer of drugs to buyers, Penagos was only present on one occasion when the two active conspirators loaded or unloaded cocaine, and Penagos did not attempt to evade capture. 823 F.2d at 349. The court concluded:

Penagos' "behavior was perfectly consistent with that of an innocent person having no stake or interest in drug transactions" and thus, no rational jury could have found him guilty of conspiracy.  Id. at 349-50.

Finally, in Sanchez-Mata, analogizing to Lopez and Penagos, the Ninth Circuit reversed Sanchez-Mata's conspiracy conviction, emphasizing that Sanchez-Mata was "merely a passenger in the Audi (which contained the drugs);" at the time of his arrest, he had only $24.00 on him; no drug transaction was underway; he did not attempt to evade capture or arrest; his fingerprints were not found on the drug bags; and he had no long term or familial relationship to the co-defendants.  The court concluded that even knowledge by Sanchez-Mata that drugs were present is not enough to prove involvement in a drug conspiracy; like Penagos, Sanchez-Mata's behavior was consistent with a innocent person having no stake or interest in drug transactions.  925 F.2d at 1168; accord Ramos-Rascon, 8 F.3d at 707-10 (finding evidence insufficient to support conspiracy conviction despite facts that defendants sat outside the hotel room where the drug deal took place, defendants followed the seller there and were "hyper-vigilant" while driving to the hotel, and one of the two defendants tried to evade arrest; court found it critical that defendants had not arrived earlier or made more maneuvering techniques and there were no communication devices or weapons to indicate surveillance by defendants).

/////
/////
/////

Based on the findings discussed above, the court holds that these cases are controlling of the issue here.[7] The evidence of wrongdoing by Herrera does not rise to the level present in these cases, and even if it did, there are critical facts present in this case which also prompted the Ninth Circuit in the above cases to find the evidence *insufficient* to support a conspiracy conviction. Those facts include: Herrera had minimal contact or communication, if any at all, with the conspirators or alleged co-conspirators in the days prior to and including February 24, 2007; there is no evidence Herrera knew of the planned drug transaction; though he was *present* as a passenger in the Silverado at the parking lot in which the drug transaction took place, there is no evidence that *he* knowingly engaged in any counter-surveillance or security functions; and Herrera did not attempt to evade arrest.

Under these facts, the court is compelled to grant Herrera's Rule 29 motion. As aptly stated by the Ninth Circuit in Herrera-Gonzales, 263 F.3d at 1097-98:

> [While it may be] extremely imprudent to remain knowingly in the presence of an ongoing criminal conspiracy, [i]mprudence is not a crime. Sometimes youthful inexperience and lack of common sense, impecuniousness, or personal relationships may bring the innocent into continuing proximity with the

---

[7] To the contrary, the court finds the government's primary authorities easily distinguishable. In United States v. Morena-Flores, 33 F.3d 1164 (9th Cir. 1994), the defendant was present when the drugs entered the United States, while the car containing the drugs was parked (to attempt to evade detection), and while the drugs were being transferred; defendant made clear counter-surveillance actions; defendant attempted to flee at the time of arrest, and he admitted he would receive 2,500 for the deal and that he wasn't the "Big Guy." In United States v. Hernandez, 876 F.2d 774 (9th Cir. 1989), the defendants were present when the drugs were packaged, divided, and delivered.

    guilty, but our line of 'mere presence' cases requires acquittal in the absence of evidence of intentional participation.

Here, the government has failed to produce evidence from which a rational trier of fact could find Herrera guilty beyond a reasonable doubt of the charge of conspiracy.

    For the same reasons and based on the same findings as set forth above, the court also concludes that the government has failed to produce evidence from which a rational trier of fact could find Herrera guilty beyond a reasonable doubt of the charge of possession of methamphetamine with intent to distribute.

    Herrera's Rule 29 motion is GRANTED as to both counts charged against him in the Superseding Indictment.

    IT IS SO ORDERED.

DATED: June 9, 2008

*[signature]*

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE